# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WISCONSIN

JOHN MANN ANDERSON,

    Petitioner,

    v.                                      Case No. 06-C-0591

PHIL A. KINGSTON
  Warden, Waupun Correctional Institution,

    Respondent.

## DECISION AND ORDER

On May 16, 2008, petitioner John Mann Anderson filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner was convicted of two counts of first degree sexual assault and one count of kidnapping in violation of Wis. Stats. §§ 940.225(1)(b) and 940.32(1)(a). On June 13, 2002, he was sentenced to 40 years on each of the three counts, to be served consecutively to each other for a total of 120 years.

The petitioner challenges the judgment of his conviction, which was entered on June 13, 2002. In his petition, the petitioner alleges: (1) a due process violation, (2) misapplication of the law by the state circuit court and court of appeals, and (3) ineffective assistance of counsel.

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the matter arises under federal statutes. Venue is proper under 28 U.S.C. § 1391. The case was assigned according to the random assignment of civil cases pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 72.1 (E.D. Wis.). The parties have consented to United

States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General Local Rule 73.1 (E.D. Wis.).

This court conducted a preliminary examination of the petition in accordance with Rule 4 of the Rules Governing § 2254 Cases. By order filed June 2, 2006, this court determined that "it does not plainly appear from the 'face of the petition' that the petitioner is not entitled to relief." Thus, this court ordered the respondent, Warden Phil Kingston of the Waupun Correctional Institution, to answer the petition for a writ of habeas corpus. The respondent answered the petition. The parties subsequently briefed the petition for a writ of habeas corpus and, therefore, the petition is ready for disposition and will be addressed herein.

## **APPLICABLE LAW**

The habeas corpus statute was amended by the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub.L. No. 104-132, 100 Stat. 1214 (1996) which provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This provision entitles federal courts acting within their jurisdiction to interpret the law independently, but requires them to refrain from "fine tuning" state court interpretations. Lindh v. Murphy, 96 F.3d 856, 870-877 (7th Cir. 1996), rev'd on other grounds,

521 U.S. 320 (1997). "Thus, although this court reviews the state court's legal conclusions and mixed questions of law and fact de novo, that review is 'tempered by AEDPA's deferential constraints.'" Hereford v. McCaughtry, 101 F.Supp.2d 742, 746 (E.D. Wis. 2000) (quoting Sanchez v. Gilmore, 189 F.3d 619, 623 [7th Cir. 1999]).

A state court's decision is "contrary to . . . clearly established Federal law as established by the United States Supreme Court" if it is "substantially different from relevant [Supreme Court] precedent." Washington v. Smith, 219 F.3d 620, 628 (7th Cir. 2000) (quoting Williams v. Taylor, 120 S. Ct. 1495, 1519 [2000]). The court of appeals for this circuit recognized the narrow application of the "contrary to" clause:

> under the "contrary to" clause of § 2254(d)(1), [a court] could grant a writ of habeas corpus . . . where the state court applied a rule that contradicts the governing law as expounded in Supreme Court cases or where the state court confronts facts materially indistinguishable from a Supreme Court case and nevertheless arrives at a different result.

Washington, 219 F.3d at 628. The court went on to explain that the "unreasonable application of" clause was broader and "allows a federal habeas court to grant habeas relief whenever the state court 'unreasonably applied [a clearly established] principle to the facts of the prisoner's case.'" Id. (quoting Williams, 120 S. Ct. at 1523).

To be unreasonable, a state court ruling must be more than simply "erroneous" and perhaps more than "clearly erroneous." Hennon v. Cooper, 109 F.3d 330, 334 (7th Cir. 1997). Under the "unreasonableness" standard, a state court's decision will stand "if it is one of several equally plausible outcomes." Hall v. Washington, 106 F.3d 742, 748-49 (7th Cir. 1997). In Morgan v. Krenke, the court explained that:

> [u]nreasonableness is judged by an objective standard and under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant

- 3 -

state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

232 F.3d 562, 565-66 (7th Cir. 2000) (quoting Williams, 120 S.Ct. at 1522). Therefore, before a court may issue a writ of habeas corpus, it must determine that the state court decision was both incorrect and unreasonable. Washington, 219 F.3d at 628.

## RELEVANT FACTUAL BACKGROUND

The facts of this case were set forth by the Wisconsin Court of Appeals in its February 1, 2005, decision, State v. Anderson, 280 Wis.2d 556, 694 N.W.2d 509, 2005 WI App 59, ¶¶ 2-17:

> ¶ 2 In September 2001, Anderson was charged with two counts of first-degree sexual assault and kidnapping after the State matched Anderson's DNA with evidence involving a reported abduction and rape from 1995. Counsel was appointed for Anderson. His first attorney moved to withdraw in November 2001, indicating that Anderson had told him that Anderson did not believe the attorney was representing him well. At the hearing on counsel's motion to withdraw, Anderson told the trial court that he wanted to represent himself, with standby counsel available. The trial court said it would consider Anderson's request in the future and ordered that new counsel be appointed to represent Anderson.
>
> ¶ 3 Anderson subsequently sent the trial court a letter, again asking to proceed pro se. He wrote:
>
> I have stressed that I intend on representing myself. It's the only way I will go to trial. I demand to exercise my constitutional rights to proceed pro se; and represent myself. I would appreciate a "standby" counsel to assist me. . ..
>
> (Capitalization in original omitted).
>
> ¶ 4 At a hearing in December 2001, Anderson appeared with his new trial counsel. Trial counsel told the trial court that Anderson had indicated he wanted to represent himself. The trial court considered Anderson's request to proceed pro se. It noted that Anderson had two separate cases pending before the trial court, and that it had already considered Anderson's request to represent himself in the other case. In considering that request, the trial court learned that Anderson had

represented himself at two jury trials in the past. The trial court distinguished the two prior cases, noting that this case involved the complex science of a DNA match. The trial court held that because there were complicated issues related to the admission of DNA evidence, Anderson would not be able to represent himself. The trial court denied Anderson's request.

¶ 5 Following the hearing, Anderson wrote to the trial court, again asking to proceed pro se. He stressed that he was confident he could represent himself and stated that he would not allow anyone, even Johnny Cochran, to represent him in this matter.

¶ 6 Anderson's second attorney moved to withdraw, indicating that Anderson did not want the attorney's representation. Counsel indicated that the public defender's office had agreed to appoint a third attorney. At a January 2002 hearing on counsel's motion to withdraw, Anderson reiterated his desire to proceed pro se. The trial court again denied Anderson's request, explaining that although Anderson was intelligent enough to proceed pro se, the court would not allow it because of the complex legal issues in this case. Counsel was allowed to withdraw.

¶ 7 At a status conference in late January 2002, Anderson's new attorney promptly informed the trial court that Anderson had told him he did not want the attorney's assistance. The parties discussed the issue at length, including the possibility that if Anderson did not have appointed counsel, the public defender's office may not pay for the services of a DNA expert. The trial court concluded that Anderson could not represent himself, stating: "[I]t would be a miscarriage of justice to essentially allow you to proceed pro se. It would be a miscarriage of justice to allow this case to proceed without at least having the opportunity of obtaining the expertise of an expert to review the DNA evidence." The case was set for trial in April 2002.

¶ 8 On April 12, the parties appeared before the trial court for a motion hearing on several evidentiary matters. Counsel moved the trial court to dismiss the case against Anderson because there had been numerous discovery problems. The trial court denied the motion, ordered the State to provide the missing information and continued the motion hearing.

¶ 9 On April 23, trial counsel filed a written motion (dated April 21) to dismiss the case, arguing that the State had still not provided all necessary discovery. Counsel also indicated that he had received some information from the State only one business day before trial, which did not allow him sufficient time to review it. Counsel states, in the motion, that Anderson's defense would not be "constitutionally sufficient" if the trial were to begin as scheduled.

¶ 10 On April 23, the trial court heard Anderson's motion to dismiss. Counsel argued, in the alternative, that the trial court should adjourn the trial date and release Anderson. The trial court declined to dismiss the case, concluding that none of the alleged errors by the State were egregious enough to justify dismissal. The trial court then gave Anderson two choices: start the trial or adjourn it. Anderson elected to start the trial, rather than waive his speedy trial demand.

¶ 11 Trial counsel then asked the trial court to again consider Anderson's request to proceed pro se with standby counsel. Trial counsel argued that because the defense had decided not to call a DNA expert, the case was less complicated and Anderson should be allowed to represent himself. Counsel argued:

> I have had the ability to see that he is able to conduct legal research. He is able to develop strategy and develop issues for trial on his own. He has essentially asked me at times to go in a certain direction, and that's what I have done. I don't believe his defense would be hampered at all by allowing him to represent himself if he so desires.

¶ 12 The trial court asked Anderson whether he wanted to be represented by a lawyer. Anderson responded:

> Judge, I would. You know, [trial counsel] is a good attorney to me, but [he] has indicated on the record that ... in some respects that he would be ineffective assistance of counsel if we were to proceed with trial today and because of the State's recklessness, but because of that, I have ... to represent myself. Now, somebody got to be effective.

Following this statement, the trial court engaged Anderson in a detailed colloquy about his desire to proceed pro se. In answering the trial court's questions, Anderson on several occasions qualified his desire to represent himself, indicating that his desire was based in part on his belief that he "wouldn't be getting effective assistance of counsel" if his trial counsel represented him. Nonetheless, Anderson indicated that he wanted to represent himself.

¶ 13 In response to the colloquy, the State expressed its concerns that Anderson's interest in proceeding pro se was conditioned on his belief that he would not receive effective assistance of counsel if the trial began immediately. The State was also concerned because Anderson had indicated that if given the option, he would prefer to adjourn the trial date and be released until the trial. The State suggested that the trial court find good cause to continue the trial date and deny Anderson's request to represent himself.

- 6 -

¶ 14 The trial court again questioned Anderson about his desire to start the trial. The trial court expressed concern that Anderson kept "trying to sort of bury this sort of procedural landmark in this case by saying that somehow you're being forced into going to trial." To remedy this concern, the trial court decided to postpone the trial by one week, thereby allowing Anderson and trial counsel to complete their investigation. The trial court indicated that on the day of trial, after pretrial preparations and motions were completed, it would likely allow trial counsel to withdraw and be appointed standby counsel for Anderson, who would then be allowed to represent himself.

¶ 15 On April 29, the parties appeared for trial. The trial court noted that it still intended to have trial counsel handle the final pretrial motions and would likely allow Anderson to represent himself at trial. The trial court made its final evidentiary rulings and the parties returned on April 30 to begin the trial. The trial court told Anderson that it would allow him to represent himself and discussed how the trial would be conducted. Trial counsel was appointed to serve as Anderson's standby counsel.

¶ 16 Anderson conducted his own defense, which included opening and closing statements, witness examination and the presentation of a defense. He consulted with standby counsel during the proceedings. Ultimately, the jury returned a guilty verdict on all counts. Trial counsel was reappointed to represent Anderson at sentencing. Anderson was sentenced to an indeterminate term of forty years on each charge, to be served consecutively to each other and to any other sentences previously imposed.

¶ 17 Postconviction counsel was appointed and filed a motion for a new trial, alleging that Anderson should not have been allowed to represent himself at trial and that he was denied the effective assistance of counsel. The trial court denied the motion and this appeal followed.

(Footnotes omitted).

On appeal, the petitioner argued that the trial court erroneously exercised its discretion by requiring the petitioner to represent himself at trial because the record demonstrated that the petitioner did not unequivocally waive his right to counsel and because the petitioner's choice to proceed without counsel was compelled by his trial attorney's representation that he could not adequately represent the petitioner at trial unless the petitioner waived his right to a speedy trial. The petitioner also argued on appeal that his trial counsel was ineffective

- 7 -

because counsel failed to timely correct the petitioner's "mistaken belief" that counsel would be ineffective if he had to proceed to trial as scheduled in the absence of full discovery from the State. The Wisconsin Court of Appeals affirmed the petitioner's conviction.

With regard to the petitioner's claim that he did not validly waive his right to counsel, the court stated:

> ¶ 24 We conclude that the record demonstrates that Anderson knowingly, intelligently and voluntarily waived his right to counsel. Anderson had been attempting for months to be allowed to represent himself. The record clearly demonstrates that Anderson was aware of the difficulties and disadvantages of self-representation, the seriousness of the charges against him, and the general range of penalties that could be imposed on him. See Klessig, 211 Wis.2d at 206, 564 N.W.2d 716. Anderson's representations to the trial court on April 23 were consistent with statements he made on numerous occasions, over the course of seven months, as the trial court engaged in colloquies with Anderson concerning his desire to proceed pro se.
>
> ¶ 25 Anderson asserts that he did not make an "unequivocal" choice to proceed without counsel, see Johnson, 50 Wis.2d at 284, 184 N.W.2d 107, because he was forced to make tough choices. Anderson may not have been pleased that he had to make a choice, but he clearly made a deliberate and unequivocal choice to waive his right to counsel. We agree with the State that making Anderson choose to represent himself, allow trial counsel to represent him, or give up his speedy trial does not render Anderson's decision any less deliberate. See Hall, 103 Wis.2d at 147-48, 307 N.W.2d 289.

Id. at ¶¶ 24-25.

Further, the court discussed and resolved the petitioner's claim that his counsel had been ineffective as follows:

> ¶ 26 Finally, Anderson contends that he is entitled to a new trial because trial counsel erroneously failed to correct Anderson's "mistaken belief" that if trial counsel had to try the case as scheduled, trial counsel would provide ineffective assistance. To prevail on his ineffective assistance claim, Anderson must show both deficient performance and prejudice. See Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish prejudice, he must show a reasonable probability that the deficient performance adversely affected his defense such that it undermines our confidence in the outcome. See id. at 694.

- 8 -

¶ 27 The State argues that Anderson cannot show deficient performance because there is no factual basis for Anderson's claim. It explains that trial counsel's written motion explicitly stated that counsel believed his representation would not be "constitutionally sufficient" if the trial began as scheduled, and that counsel's statements at the April 23 motion hearing were consistent with that assertion. The State contends that in the absence of a statement in the record or an affidavit from counsel indicating that he actually believed otherwise on April 23, there was no "mistaken belief" to correct.

¶ 28 In response, Anderson contends that a subsequent statement by trial counsel on April 29 is proof that trial counsel did not truly believe on April 23 that he would be ineffective if the trial began that day. Trial counsel stated:

> [W]e raised the issue the last time we were present in court, and it was characterized to some degree that it would hamper the defense and create a situation of ineffective assistance of counsel.
>
> I believe that is overstating the issue. Where we stand at this point is that those discovery issues have still not been resolved, and I believe it would be a more effective approach to continue the trial to a later date and have those issues resolved prior to beginning.

¶ 29 We reject Anderson's argument. In the written motion filed with the trial court on April 23, trial counsel explicitly stated that Anderson's defense would not be constitutionally sufficient if the trial was not delayed. Counsel's statements on April 29 are insufficient proof that on April 23 he actually believed that he could provide an effective defense. In the absence of such proof, there was no need for trial counsel to correct Anderson's belief that trial counsel would be ineffective. Anderson's ineffective assistance claim fails.

Id. at ¶¶ 26-29.

The petitioner subsequently filed a petition for review with the Wisconsin Supreme Court, in which he argued only that he had not unequivocally waived his right to counsel. The petition for review was denied on May 11, 2005.

## **ANALYSIS**

In his petition, the petitioner sets forth three grounds for relief. First, he asserts a Fourteenth Amendment due process violation because the trial court erroneously exercised its

discretion by requiring him to represent himself at trial. Second, the petitioner asserts that both the trial court and the Wisconsin Court of Appeals misapplied the law regarding the term "unequivocal waiver." Third, the petitioner asserts a Sixth Amendment ineffective assistance of counsel claim.

In his brief, however, the petitioner makes only two arguments: (1) that the trial court erroneously exercised its discretion by requiring the petitioner to represent himself at trial; and (2) that he was denied effective assistance of counsel at trial. To support his arguments, the petitioner refers the court to the brief filed by counsel on his behalf in the Wisconsin Court of Appeals, as well as his pro se petition for review to the Wisconsin Supreme Court. The petitioner asks the court to grant the writ of habeas corpus, reverse the decisions of the trial court and court of appeals, reverse his conviction and remand the matter for a new trial. The court will consider only the two grounds for relief briefed by the petitioner and the respondent.

**1.    Clearly Established Supreme Court Case Law**

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The Supreme Court has held that the Sixth Amendment withholds from courts "in all criminal proceedings, the power and authority to deprive an accused of his life or liberty unless he has or waives the assistance of counsel." Johnson v. Zerbst, 304 U.S. 458, 463 (1938). The right to the assistance of counsel:

> is one of the safeguards of the Sixth Amendment deemed necessary to insure fundamental human rights of life and liberty. . .. It embodies a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, wherein the prosecution is represented by experienced and learned counsel.

Id. at 462-63.

The right to counsel applies in both federal and state courts, see Gideon v. Wainwright, 372 U.S. 335, 343-45 (1963); at trial and in the defendant's first appeal as a matter of right, see Douglas v. California, 372 U.S. 353, 355 (1963). If the defendant is indigent, the state must furnish him with appointed counsel for his defense. Scott v. Illinois, 440 U.S. 367, 374 (1979).

A defendant may waive his right to the assistance of counsel. Adams v. United States ex rel. McCann, 317 U.S. 269, 275 (1942); Johnson, 304 U.S. at 465. But waiver must be intelligent and competent, Faretta v. California, 422 U.S. 806, 835 (1975); Johnson, 304 U.S. at 465; and can be accepted only if the defendant "knows what he is doing and his choice is made with eyes open." Adams, 317 U.S. at 279 (citing Johnson, 304 U.S. at 468). While a defendant need not himself have the skill and experience of a lawyer in order to competently and intelligently waive his right to counsel, he should be made aware of the dangers and disadvantages of self-representation before so choosing. Faretta, 422 U.S. at 835.

> The purpose of the constitutional guaranty of a right to counsel is to protect an accused from conviction resulting from his own ignorance of his legal and constitutional rights, and the guaranty would be nullified by a determination that an accused's ignorant failure to claim his rights removes the protection of the Constitution.

Johnson, 304 U.S. at 465.

Courts indulge in every reasonable presumption against wavier of the fundamental right to assistance of counsel. Id. In Johnson, the Court explained:

> [W]e do not presume acquiescence in the loss of fundamental rights. A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

Id. at 464 (internal quotation marks and footnote omitted).

Whether there is a proper waiver should be clearly determined by the court, "and it would be fitting and appropriate for that determination to appear upon the record." Id. at 465. "Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not a waiver." Carnley v. Cochran, 369 U.S. 506, 516 (1962).

Supreme Court precedent does not dictate any specific procedure – such as a hearing – for finding waiver. However, the Court has stated that before accepting a waiver the court should engage in a "searching and formal inquiry" into the defendant's understanding of the waiver and awareness of the dangers and disadvantages of self-representation. Patterson v. Illinois, 487 U.S. 285, 299 (1988); see also, Von Moltke v. Gillies, 332 U.S. 708, 724 (1948) (plurality opinion) (stating that the court should make a "penetrating and comprehensive examination of all of the circumstances" surrounding the waiver of counsel, investigating the defendant's apprehension of the nature of the charges, the statutory offenses, the range of allowable punishments, possible defenses, and all other facts "essential to a broad understanding of the whole matter").

Finally, while a claim that counsel's performance was ineffective requires a showing of prejudice before a habeas petition can be granted, see Strickland v. Washington, 466 U.S. 668, 688 (1984), the complete deprivation of counsel does not, Penson v. Ohio, 488 U.S. 75, 88 (1988). Actual denial of any assistance of counsel, whether at trial or on appeal, is presumed to result in prejudice and can never be treated as harmless error. Id. A proceeding is simply

unfair if the accused is denied counsel at a critical stage. United States v. Cronic, 466 U.S. 648, 659 (1984).

**2.      Whether Petitioner's Waiver of his Right to Counsel Was Unequivocal**

The petitioner insists that his waiver of his right to counsel was not unequivocal because he was forced to choose between proceeding to trial without counsel and waiving his statutory right to a speedy trial. The respondent maintains that the choice put to the petitioner was not constitutionally impermissible and that the petitioner was not obligated to choose between incompetent counsel and self-representation. Rather, the respondent argues that the petitioner was presented with the choice of proceeding pro se or allowing his counsel more time to prepare, but he refused to waive his statutory right to a speedy trial.

The court of appeals considered the extensive colloquy the trial court conducted with the petitioner on April 23, 2002, as well as other colloquies, and concluded "that the record demonstrates that Anderson knowingly, intelligently and voluntarily waived his right to counsel." Id. at ¶ 24. The court of appeals cited State v. Klessig, 211 Wis.2d 194, 206 (Wis. App. 1997), in which the Wisconsin Supreme Court made clear that a colloquy is required in every case where the court finds that a criminal defendant has waived his right to counsel. In Klessig, the Court set forth guidelines for "a colloquy designed to ensure that the defendant: (1) made a deliberate choice to proceed without counsel, (2) was aware of the difficulties and disadvantages of self-representation, (3) was aware of the seriousness of the charge or charges against him, and (4) was aware of the general range of penalties that could have been imposed on him." Id.

- 13 -

The very portions of the transcript the petitioner cites in this case reveal that the colloquy the trial court conducted satisfied these requirements. (Answer, Ex. B at 8-13). The trial court advised the petitioner of the specific penalties for each of the crimes with which the petitioner was charged, detailed some of the disadvantages of self-representation and repeatedly confirmed the petitioner's choice to proceed without counsel. Id.

The petitioner seems to argue that Klessig abolished the rule from State v. Johnson, 50 Wis. 2d 280, 284 (1971), that a "waiver must be definite, unequivocal and unconditional." (See Reply and Objection to Respondent's Answer at 3). Although Klessig may not use the word "unequivocal," as Johnson does, it stands for the same principle regarding waiver. See Klessig, 211 Wis.2d at 206.

The petitioner further contends that each of his responses regarding his choice to proceed to trial was conditional. (Answer, Ex. B at 13). However, the petitioner's desire to represent himself was not a fleeting request. Rather, the trial court's decision to let the petitioner proceed pro se with standby counsel was exactly what the petitioner had requested numerous times. The court of appeals recognized this when it determined that "Anderson's representations to the trial court on April 23 were consistent with statements he made on numerous occasions, over the course of seven months, as the trial court engaged in colloquies with Anderson concerning his desire to proceed pro se." Anderson, 2005 WI App 59, ¶ 24. Moreover, the court of appeals concluded that "making Anderson choose to represent himself, allow trial counsel to represent him, or give up his speedy trial does not render Anderson's decision any less deliberate." Id. at ¶ 25.

Although courts scrutinize a waiver of counsel and indulge every reasonable presumption against the waiver, this does not mean that the decision to waive counsel must be entirely

- 14 -

unconstrained. Wilks v. Israel, 627 F.2d 32, 35 (7th Cir. 1980) (citations omitted). "A criminal defendant may be asked, in the interest of orderly procedures, to choose between waiver and another course of action as long as the choice presented to him is not constitutionally offensive." Id. (quoting United States v. Davis, 604 F.2d 474, 482 (7th Cir. 1979) (quoting Maynard v. Meachum, 545 F.2d 273, 278 [1st Cir. 1976]).

Here, the petitioner was given the opportunity to waive his statutory right to a speedy trial under Wis. Stat. § 971.10 in order to give trial counsel additional time to prepare. The choice presented to the petitioner was not constitutionally offensive because the alternative to self-representation he was offered – an adjournment with the petitioner's waiver of his right to a speedy trial – would not have operated to deprive him of a fair trial. See Wilks, 627 F.2d at 36. The petitioner nevertheless chose to proceed to trial pro se and his waiver was the product of a free and meaningful choice. He opted for a speedy trial instead of representation by counsel.

Accordingly, the court of appeal's determination that the petitioner's choice was unequivocal was neither contrary to, nor an unreasonable application of, established federal law. The petitioner is not entitled to habeas corpus relief on this claim.

**3.      Whether the Petitioner was Denied Effective Assistance of Counsel**

The petitioner also contends that he was denied the effective assistance of counsel. Specifically, he asserts that trial counsel failed to timely correct the petitioner's mistaken belief that counsel would be ineffective if he had to proceed to trial as scheduled without full discovery until after the court had entered an order requiring the petitioner to represent himself at trial.

As an initial matter, the respondent submits that the petitioner procedurally defaulted on his ineffective assistance of counsel claim by failing to raise it in his petition for review to the

Wisconsin Supreme Court. See O'Sullivan v. Boerckel, 526 U.S. 838, 845, 848-49 (1999) (failure to raise claim in request for discretionary review with State's highest court amounts to procedural default). However, the respondent also admits that he may have forfeited his right to assert the procedural default defense by not raising it in his answer. See Perruquet v. Briley, 390 F.3d 505, 517 (7th Cir. 2004). Although the court may overlook the respondent's failure to raise the procedural default defense in his answer and find the petitioner's claim defaulted if doing so would serve the interests of comity and federalism, see id. at 518, the court declines to do so here. Given each party's failure to make an argument regarding this claim at some point, the court will proceed to consider the merits of the petitioner's ineffective assistance of counsel claim.

To establish ineffective assistance of counsel, a petitioner must satisfy a two-pronged test. United States v. Traeger, 289 F.3d 461, 470 (7th Cir. 2002) (citing Strickland, 466 U.S. at 687). To satisfy the first prong, the petitioner must demonstrate that counsel's performance was deficient, which means that the attorney's errors were so serious that the defendant was deprived of "counsel" within the meaning of the Sixth Amendment. Id. To satisfy the second prong, the petitioner must show that the deficient performance prejudiced him. Id.

The court of appeals concluded that trial counsel was being truthful when he advised the petitioner and the trial court that he would not be able to provide effective assistance if the case proceeded to trial as scheduled. Anderson, 2005 WI App 59, ¶ 29. This conclusion rendered the petitioner's ineffective assistance of counsel claim invalid because, as the court of appeals reasoned, there was no mistaken belief for counsel to correct. The court of appeals cited and reasonably relied on Strickland in denying the request for a writ of habeas corpus on this claim. Thus, the court's decision regarding the petitioner's ineffective assistance of counsel claim was

neither contrary to, nor an unreasonable application, of federal law. The petitioner is not entitled to habeas corpus relief on this claim.

In sum, for the reasons stated herein, the petitioner is not entitled to habeas corpus relief on the claims asserted in the petition. Accordingly, his petition for a writ of habeas corpus will be denied.

## **ORDER**

**NOW, THEREFORE, IT IS ORDERED** that the petitioner's petition for a writ of habeas corpus be and hereby is **denied**.

**IT IS FURTHER ORDERED** that this action be and hereby is **dismissed**.

**IT IS ALSO ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 14th day of September, 2009.

BY THE COURT:

s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge